[No. 39798.     Department One.     August 15, 1968.]

THE CITY OF SEATTLE, *Respondent,* v. GARLAND GARRIS, *Appellant.*†

*Wm. J. Gaffney,* for appellant.

*A. L. Newbould* and *Jack B. Regan,* for respondent.

PER CURIAM.—Appellant was charged in the municipal court of Seattle with committing a misdemeanor in that he did "touch, beat and

*Reported in 442 P.2d 1000.

†Reported in 444 P.2d 365.

strike one Adriana Nicolaas with intent to cause bodily injury" in violation of a certain city ordinance. He pleaded not guilty and was found guilty by the municipal court.

He appealed to the superior court where he was tried de novo before a jury which returned a verdict of guilty. The trial court entered its judgment and sentence whereby appellant was directed to serve 180 days in the city jail.

On his appeal therefrom to this court, appellant has made only one assignment of error as follows:

The trial court erred in denying the defendant's offer of proof, set forth in the statement of facts of this brief, (St. 79-80), which included the proposed testimony of the defendant that he may have returned to the apartment of Mrs. Nicolaas, but does not recall it, for he suffered a loss of memory from intoxication. Also related matters.

It is not necessary to state in detail all the conflicting testimony of the several witnesses who testified at the trial. We refer only to the testimony which has a bearing on the single error upon which appellant relies for reversal, to wit, the trial court's denial of his offer of proof.

The prosecuting witness, her friend Mrs. Fryer, appellant and his friend Walter Johnson each was a tenant in the same apartment house in Seattle. Appellant and Mr. Johnson were in Mrs. Nicolaas' apartment between 6 and 8 p.m. on the day of the alleged assault. The two men were drinking wine brought there by appellant. There is a conflict in the testimony as to whether Mrs. Nicolaas drank any wine on that occasion.

Mr. Johnson left the apartment before the alleged assault took place and went to his own apartment.

Mrs. Fryer testified that about 7:30 the following morning (February 26) a young boy who was delivering papers in the apartment summoned her to assist a lady (Mrs. Nicolaas) who, he said, was dying out in the hall. Mrs. Fryer went out and saw Mrs. Nicolaas standing by her own door asking for help. Mrs. Fryer called the landlord who assisted her in getting Mrs. Nicolaas into Mrs. Fryer's apartment. She then telephoned Mrs. Nicolaas' daughter and also the police.

The portion of Mrs. Fryer's testimony which is material to the sole assignment of error was:

Q. At any time that morning did you have any occasion to go in her apartment? A. Yes. She asked me to go and get her purse. She had five dollars in it. And I went back to get her purse, and here is the landlord come back up, and here was Mr. Garris in her bed. And I don't know whether he had his trousers or shoes on, but he kept hollering and saying, "Mama, come back. Mama, come back." And he was trying to put his shirt on. Q. Did he appear sober or drunk to you? A. He was intoxicated. Q. What happened after that? A. Then he got his shirt on, and the landlord and I come back up and I said, "Where is Mr. Garrison?" And he got away and went downstairs. And then the officers asked me where would I find him. I said, "You go down in the parking and go in the alley, you will find him under the shed where they all go to hide with their bottles." That is where they found him.

Later appellant testified:

And I didn't see Mama any more after I just put her to bed around about 6:00, 6:30, maybe 7:00 o'clock. And Johnson was there with me and we went to his apartment. And then I was in Johnson's apartment, and I got up and says, "I'm going home. I will catch me a cab or anything. I'll go home and then I will see you later."

So I walked outside, and I guess some officers seen me. He says, "Where are you going?" I says, "I'm going home." They says, "Wait a minute. We want to talk to you." So I stopped, and they says, "You drinking?" I said I had a drink or two. So they took me down and put me in the City jail. That was it, and I didn't know nothing about Mama or anything had happened to her until I got out of jail. I went home and went back to get my car, and then Hank told me about it."

In addition to the above-quoted testimony appellant categorically denied several times that he was in Mrs. Nicolaas' apartment at any time after 7 p.m. on February 25, 1967.

The offer of proof with which we are concerned in this case was made as follows:

Mr. GAFFNEY: I want to make an offer of proof. I offer to cross-examine the defendant further as to what happened after about 3:00 o'clock in the morning. THE COURT: Cross-examine? MR. GAFFNEY: I beg your pardon. Further direct examination as to what happened after about 3:00 o'clock on the morning of Sunday, February 25, 1967. I expect him to testify that Johnson called him about 3:00 o'clock in the morning and said, "Mrs. Nicolaas has fallen out of bed again." He did not go to Mrs. Nicolaas' apartment again that he recalls, but that he directed Johnson to go out to the defendant's car and get another fifth of wine; and, as he recalls, he and Johnson drank all or substantially all of another fifth of wine in Johnson's apartment. That after that he laid down in Johnson's apartment on the davenport, and that he recalls nothing further until he was arrested by the police outside the apartments. That he does not recall how he got outside the apartments, and that he has no recollection of going back to Mrs. Nicolaas' apartment again before his arrest, although he does not really know because he has a loss of memory on that. MR. ANDERSON: I object because it has already been testified. It will just be repetition. MR. GAFFNEY: The defendant has not clearly testified so far that he has any loss of memory that morning in his waking moments. So far as I am concerned there is nothing in the defendant's testimony that clearly says that there is a loss of memory during his waking moments there. MR. ANDERSON: I remember Mr. Gaffney's asking him the question. MR. GAFFNEY: I have a great deal of difficulty getting clear answers. THE COURT: Check back on the testimony. If it is there, I will sustain the objection. If it is not, go ahead. MR. GAFFNEY: The defendant has not testified so far that he does not remember how he got outside. THE COURT: You can ask him that specific question. That will cover that. MR. GAFFNEY: I also wish to ask him again—I have undoubtedly asked him if he recalls going back to Mrs. Nicolaas' apartment. As far as I know he has said so far he didn't go back. Now he is prepared to say he does not remember going back but he may have for all he knows because he does know that he has a loss of memory that night. He knows he has a loss of memory between the time he laid down in Johnson's apartment and the time he was arrested because he can't remember how he got outside. MR. ANDERSON: I would object to that question as calling for pure speculation on the part of the witness. THE COURT: I am afraid it is. MR. GAFFNEY: Okay. Either he can remember everything in his waking moments, or he can't. THE COURT: He has already stated it. He can't remember. MR. GAFFNEY: I made my offer of proof, and I take it the Court has ruled. The only thing the Court has

permitted me to ask him is whether he remembers how he got outside at the point where he was arrested? The Court: That is right. You didn't cover that, but you covered everything else. Mr. Gaffney: Exception.

Appellant's only argument that reversible error was committed when the trial court refused his offer of proof appears to be that the trial court was acting under a misconception of what appellant had previously testified to regarding his memory of the pertinent events.

From our examination of the record it seems clear to us that the trial court in ruling on the offer of proof was not acting under such misconception because appellant had already testified that after drinking [another] fifth of wine in Johnson's apartment about 3 a.m. on February 26, "I really don't remember anything."

Judgment and sentence affirmed.